UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| Alesia Wood, | ) | CASE NO. 5:17CV2234 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| U.S. Bank National Association, | ) | |
| | ) | (Resolves Docs. 55 and 89) |
| Defendant. | ) | |
| | ) | |

Pending before the Court is a motion for summary judgment filed by Defendant U.S. Bank National Association ("US Bank"). Doc. 55. Plaintiff Alesia Wood has opposed the motion, and US Bank has replied. Wood has also sought to unseal her brief in opposition. Doc. 89. The motion to unseal is DENIED. US Bank's motion for summary judgment is GRANTED.

**I. Facts & Procedure**

The underlying facts that generated this lawsuit are almost entirely undisputed. On the evening of June 6, 2017, Wood entered a branch of US Bank located inside an Acme Fresh Market grocery store on Bailey Road in Cuyahoga Falls, Ohio. Wood entered the branch with her daughter, Shatiera Wood. Wood entered the bank with the hope of finalizing a Western Union money pick up. Specifically, Wood had received funds from her son, a professional basketball player in Argentina. It is undisputed that when Wood first filled out the Western Union Pick-Up Money Form, she mistakenly listed herself as both the sender and the receiver of the funds. Additionally, Wood failed to fill out the portion requesting the transactions originating location.

Wood presented the form to Angela Smith, a teller at the Bailey Road branch. Smith recognized the error on the form and informed Wood that she would need the sender's name. Wood then spoke with her daughter and they both used her phone to obtain the sender's name, Ernesto Salvador Benitez. At the time, Smith was unaware that the younger woman was Wood's daughter. Based upon the incorrect form and Wood's need to involve a third party to gather the sender's name, Smith engaged in a series of questions with Wood to ensure that the transaction was not fraudulent. At that time, branch manager Angela Trogdon became involved and also questioned Wood. At no point during these questions did Wood correctly inform the bank employees of the source of the money – her son. In fact, at one point, she openly lied to the employees and claimed it was payment for some painting that she had completed.

In addition, because the transaction was greater than $3,000, Smith request a second form of identification from Wood.[1] One form of secondary identification that was requested was Wood's social security card. Because Wood could not produce a second form of identification, the transaction was not completed on June 6, 2017.

Wood returned to the same bank branch the following day just after the lunch hour and had her social security card and a certified copy of her birth certificate. Wood began her attempted transaction anew with bank employee Mary Greif. Greif then engaged in a line of questioning similar to the questions asked by Smith the prior evening. Wood asserts that she did not respond to many of these questions because she had answered them the prior evening. She did, however, at one point, claim that the money was "for work." During this transaction, Greif spoke with Trogdon and reviewed the account remarks entered from the prior evening. Greif asserted that her conversation with Trogdon revealed that the information provided on June 7, 2017 was in conflict

---

[1] Wood's argument regarding the necessity and propriety of this request will be addressed below.

with the information provided the prior day. Greif then informed Wood that she was uncomfortable completing the transaction based upon the inconsistencies.

Wood then requested to speak with the branch manager. Greif directed her to wait at the end of front area and that the branch manager would call and speak with her. Greif also sought to make a copy of the Western Union form at that time. During that time, Wood yelled, "I want my money" and asserted that her race was the only reason her transaction was being refused. Greif responded: "No, I am trying to protect you, I am trying to protect the bank, I am trying to do my job the way my training- the way I have been trained to my job and that is all there is to it." During Wood's altercation with Greif, another individual nearby called and reported the disturbance.

At the same time, Smith was on the telephone with the local police regarding another individual in the bank, Gerald Sanders, that a bank employee suspected of fraud. When police indicated that they had received a separate call about Wood, Smith informed that it was indeed two separate incidents.

Wood left that branch and drove to the downtown Akron US Bank branch. At the new branch, Wood filled out a new Western Union form. This time, the form had no interlineations or edits. Wood also presented both a primary and secondary form of identification and responded to the questions asked by the branch employee. Satisfied with Wood's form, identification, and answers, the downtown branch employee completed the transaction on Wood's behalf.

Based upon the events above, Wood filed suit against US Bank. Wood's amended complaint contains three causes of action. Wood claims that the conduct above constituted unlawful discrimination under 42 U.S.C. § 1981. She also pled claims for false light/invasion of privacy, and breach of contract, her deposit agreement. US Bank has moved for summary judgment on all three claims, and the Court now resolves the parties' arguments.

**II. Legal Standard**

Summary judgment is appropriate only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986). The moving party must demonstrate to the court through reference to pleadings and discovery responses the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. at 323. This is so that summary judgment can be used to dispose of claims and defenses which are factually unsupported. *Id.* at 324. The burden on the nonmoving party is to show, through the use of evidentiary materials, the existence of a material fact which must be tried. *Id.* The court's inquiry at the summary judgment stage is "the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250.

The court's treatment of facts and inferences in a light favorable to the nonmoving party does not relieve that party of its obligation "to go beyond the pleadings" to oppose an otherwise properly supported motion for summary judgment under Rule 56(e). *See Celotex Corp. v. Catrett,* 477 U.S. at 324. The nonmoving party must oppose a proper summary judgment motion "by any kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves ..." *Id.* Rule 56(c) states, "... [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a

judgment as a matter of law."  A scintilla of evidence in favor of the nonmoving party is not sufficient.

**III. Law and Analysis**

    1.   <u>False Light/Invasion of Privacy and Breach of Contract</u>

Initially, the Court notes that Wood did not respond to US Bank's motion for summary judgment on these claims.  A party waives opposition to an argument by failing to address it in her responsive brief. *See Dage v. Time Warner Cable*, 395 F.Supp.2d 668, 679 (S.D. Ohio 2005); *Cunningham v. Tenn. Cancer Specialists, PLLC,* 957 F. Supp. 2d 899, 921 (E.D. Tenn. 2013). Accordingly, the Court is not required to consider their merits and may grant judgment in US Bank's favor on both claims.  *See Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) ("The district court properly declined to consider the merits of this claim because Hicks failed to address it in either his response to the summary judgment motion or his response to Concorde's reply brief.").

    2.   <u>42 U.S.C. § 1981</u>

Section 1981 provides that "[a]ll persons ... shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981(a). This Court applies the *McDonnell Douglas* burden-shifting framework—initially developed in the Title VII employment discrimination context—to Section 1981 claims of race discrimination based on circumstantial evidence. *Christian v. Wal–Mart Stores Inc.*, 252 F.3d 862, 868 (6th Cir. 2001) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under this framework, Wood must first establish a prima facie case of discrimination. If she is able to do so, the burden of production shifts to US Bank to identify a legitimate, nondiscriminatory reason for the adverse action. *Id.*; *Johnson v. Univ.*

*of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000). Wood must then demonstrate that the proffered reason is merely a pretext for unlawful discrimination. *Id.*

To establish a prima facie case of discrimination in a Section 1981 commercial establishment case, Wood must show that she (1) is a member of a protected class; (2) sought to make or enforce a contract for services ordinarily provided by that establishment; and (3) was denied the right to enter into or enjoy the benefits or privileges of the contractual relationship in that (a) she was deprived of services while similarly situated individuals outside the protected class were not, and/or (b) she received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory. *Christian*, 252 F.3d at 872. Service is considered "markedly hostile" when it is (1) so contrary to the establishment's financial interests, (2) so far outside of widely-accepted business norms, and (3) so arbitrary on its face, that it supports a rational inference of discrimination. *Id.* at 871.

However, "[s]ection 1981 is not a code of civility …, but a section of the law prohibiting discrimination based on race." *Moore v. Horseshoe Casino*, 2015 WL 4743804, at *5 (N.D. Ohio 2015) (citing *Miller v. Freedom Waffles, Inc.*, 2007 WL 628123, at *2–4 (W.D. Ky. 2007)). After all, there are "many circumstances where markedly hostile treatment, even in a purportedly service-oriented industry, would raise no inference of racial animus, but rather it would simply be yet another example of the decline of civility." *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 102 (2d Cir. 2001).  As a result, courts examining cases brought under the "markedly hostile manner" theory have typically required "racially charged conduct" to establish a prima facie case of discrimination. *See, e.g., Moore*, 2015 WL 4743804, at *5 (granting summary judgment in favor of casino where "there are no factual allegations suggesting [the conduct] was racially motivated"); *Miller*, 2007 WL 628123, at *4 (granting summary judgment in favor of restaurant where "there is insufficient

evidence to conclude that ... the profanity was based upon a racial animus"). *Cf. Unroe v. Bd. of Educ. Rock Hill Local Sch. Dist.*, 2006 WL 22081, at *16 (S.D. Ohio 2006) (denying summary judgment where school employee said "I don't want them kind around here"); *Leach v. Heyman*, 233 F. Supp. 2d 906, 909–11 (N.D. Ohio 2002) (denying summary judgment where cashier yelled a racial epithet and physically assaulted plaintiff).

Wood attempts to proceed under both theories of liability. However, neither theory is argued with any specificity in her brief in opposition. At one point, Wood asserts that she was "denied banking services on two occasions in a markedly hostile manner that a reasonable person would find offensive." Doc. 87 at 20. She does not explain at any point what underlying facts made her encounters on June 6 and 7 markedly hostile. Moreover, the record does not support any such conclusion. There is no evidence that bank employees ever raised their voices in any of their interactions with Wood. Wood also provided no evidence that any racial language was used during her interactions. For that matter, Wood did not allege any profanity was used.

It is not entirely clear upon what evidence Wood relies, but it appears that she asks this Court to find that her interactions were markedly hostile because the police became involved at some point. However, it is undisputed that a non-bank employee called the police because of *Wood's* loud behavior when her transaction was refused. Wood also appears to rely upon the fact that US Bank summoned the police in an entirely unrelated incident and that the customer in that incident was also an African American. Wood's reliance on that fact, however, is misplaced. There is no evidence that the call regarding that customer was race related. In fact, the evidence in the record indicates that the customer was engaged in activity that hinted at fraud.[2] The fact

---

[2] The customer was attempting to deposit a series of small checks into his frozen account.

that a responding officer found the customer's explanation to be reasonable does not suggest that US Banks' suspicions were somehow unreasonable.

The Court in *Holmes* was presented with three examples of alleged markedly hostile treatment: 1) a "rude" and "nasty" interaction with an employee, 2) the plaintiff being aggressively followed when asked to leave the casino, and 3) when asking plaintiff to leave the casino, the employee stated, "since you're going to make it racial, get out." *Holmes v. Toledo Gaming Ventures, LLC*, 2017 WL 2418750, at *4 (N.D. Ohio June 5, 2017). In rejecting a claim that these actions constituted markedly hostile, the Court noted:

> The first two allegations cited by Holmes and McKinney, accepted as true, could be evidence of poor customer service. But they are not racially charged, and therefore—standing alone—cannot establish a prima face case of discrimination.1 The third allegation, however, does have racial overtones. Holmes and McKinney claim that after they complained to Winter about Spencer's conduct and explained the reasons for their complaint, she responded, "well, since you're going to make it racial, get out." But as the Second Circuit observed under similar circumstances, "an exasperated—even testy—response to a complaint of discrimination" does not necessarily constitute marked hostility.

*Id.* Wood has presented significantly less evidences that the plaintiffs in *Holmes*. As such, she has fallen well short of her burden to demonstrate an issue of fact surrounding whether she was denied services in a markedly hostile manner.

Instead, Wood has devoted significant portions of her opposition arguing that US Bank improperly requested her social security card rather than simply requesting her social security *number*. In essence, Wood has stated a disagreement over US Bank's interpretation of its own internal policies. Wood has done so in an attempt to assert that US Bank's demand for the social security card was a pretext for discrimination. As detailed above, however, Wood has not made out a prima facie case of discrimination. Accordingly, this Court has no need to examine pretext.

Finally, Wood's claim for racial discrimination based upon being treated differently than a

similarly situated non-minority also fails. Wood has not identified any similarly situated non-minority comparator. Instead, Wood claims in conclusory fashion that a jury could conclude that the demand made to her produce her social security card is a condition that would not have been imposed on a non-protected person. Problematically for Wood, her conclusion is based entirely on conjecture and speculation. She has produced no evidence that the condition imposed upon her was different in any manner. In fact, the record reflects that the condition – producing the social security card – was a condition that all bank employees believed was imposed on every customer under similar circumstances. Accordingly, Wood's attempt to proceed under this theory also fails.

  3.  <u>Motion to Unseal</u>

  Wood's request to unseal her opposition and its exhibits is DENIED. Wood's detailed explanation of bank security policies should not be made public. Moreover, revealing to the public the exact location of US Bank cameras and the span of their viewing area is also not required to facilitate resolution of this matter. Accordingly, the documents will remain under seal as agreed to by the parties in the protective order.

## IV. Conclusion

  Defendant US Bank's motion for summary judgment is GRANTED. Plaintiff Alesia Wood's motion to unseal is DENIED. Judgment on the complaint is hereby entered in favor of Defendant.

    IT IS SO ORDERED.


Date: March 18, 2019           _/s/ John R Adams_____
                    JOHN R. ADAMS
                    U.S. DISTRICT JUDGE